UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RUSSELL OXSEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. CIV-25-571-R |
| | ) |
| PHILADELPHIA AMERICAN LIFE | ) |
| INSURANCE COMPANY, et al., | ) |
| | ) |
| Defendants. | ) |

### ORDER

Before the Court is Plaintiff Russell Oxsen's Amended Motion to Remand [Doc. No. 9]. Defendant Philadelphia American Life Insurance Company responded [Doc. No. 13]. Plaintiff replied [Doc. No. 15], and Defendant filed a sur-reply [Doc. No. 18]. The matter is now at issue. For the reasons that follow, Plaintiff's Motion is GRANTED.

### BACKGROUND

Plaintiff wanted to purchase a new health insurance plan, so he contacted Rachael Migl—an independent insurance agent authorized to solicit insurance for Defendant [Doc. No. 1-7, ¶ 8; Doc. No. 9-5]. Migl recommended her "favorite" plan, which was offered by Defendant. *Id*. Plaintiff purchased Defendant's plan through Migl. Doc. No. 1-7, ¶ 9. However, after a surgery led to an extended hospital stay, Plaintiff learned that the plan he purchased was actually four separate supplemental plans rather than one comprehensive health insurance policy. *Id*. ¶ 8. Because these plans did not provide adequate coverage, he was left with a bill for more than $100,000. *Id*. ¶ 10. On December 8, 2022, Plaintiff sued

1

both Defendant and Migl for false representation, concealment, and deceit, and Defendant for breach of contract and bad faith. Doc. No. 1-7.

Plaintiff is an Oklahoma resident, Defendant is a Texas corporation, and Migl is an Oklahoma resident [Doc. No. 1, ¶¶ 22-24]. Because Migl's joinder spoiled complete diversity sufficient to provide federal subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), the suit had to be brought in state court. On January 18, 2023, Migl removed the action to this Court alleging that she had been fraudulently joined [Doc. No. 1-1]. Plaintiff moved to remand. Doc. No. 1, ¶ 4. The Court found that Migl was not fraudulently joined, and remanded the action for lack of subject matter jurisdiction [Doc. No. 9-7].

On May 21, 2025—nearly two-and-a-half years into the litigation and shortly before trial—Plaintiff voluntarily dismissed both Migl and his breach of contract claim against Defendant. Doc. No. 1, ¶ 5. Defendant promptly removed the action because without Migl, there was complete diversity between the parties. *Id*. ¶¶ 22-25. Plaintiff again seeks remand, citing 28 U.S.C. § 1446(c)(1), which bars removal over one year after the commencement of litigation. Doc. No. 9. Defendant contends that the Court has subject matter jurisdiction under the exception to the one-year removal rule, which permits such removal when "the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1). Doc. No. 1 at p.1; Doc. No. 13 at p. 1.

## LEGAL STANDARD

"'Federal courts are courts of limited jurisdiction.'" *Bd. of Cty. Commissioners of Boulder Cty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1250 (10th Cir. 2022) (quoting

*Gunn v. Minton*, 568 U.S. 251, 256 (2013)). "So 'there is a presumption against [federal] jurisdiction.'" *Id*. (quoting *Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005)). "Thus, 'statutes conferring jurisdiction on federal courts are to be strictly construed, and doubts resolved against federal jurisdiction.'" *Id*. (quoting *United States ex rel. King v. Hillcrest Health Ctr., Inc.*, 264 F.3d 1271, 1280 (10th Cir. 2001)). And as the removing party, Defendant "bear[s] the burden of establishing jurisdiction by a preponderance of the evidence." *Id*. (citing *Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013)).

## DISCUSSION

In their briefing, the parties rely on the two-step framework outlined in *Aguayo v. AMCO Ins. Co.*, 59 F.Supp.3d 1225 (D. N.M. 2014). *Aguayo* has been utilized by numerous district courts, including this Court, *see Swihart v. Gen. Motors, LLC*, No. CIV-21-1141-R, 2022 WL 229901 (W.D. Okla. Jan. 25, 2022); *Neugebauer v. City of Davidson*, No. CIV-23-1201-R, 2024 WL 964446 (W.D. Okla. Mar. 6, 2024), and others in the Tenth Circuit to analyze the § 1446(c)(1) bad faith exception. *See Rowan v. State Farm Fire & Cas. Co.*, No. CIV-19-205-PRW, 2019 WL 4166697, at *5 n.34 (W.D. Okla. Sep. 3, 2019) (collecting cases). *Aguayo* describes the bad faith inquiry as follows:

> First, the Court inquires whether the plaintiff actively litigated against the removal spoiler in state court: asserting valid claims, taking discovery, negotiating settlement, seeking default judgments if the defendant does not answer the complaint, et cetera. Failure to actively litigate against the removal spoiler will be deemed bad faith; actively litigating against the removal spoiler, however, will create a rebuttable presumption of good faith. Second, the defendant may attempt to rebut this presumption with evidence already in the defendant's possession that establishes that, despite the plaintiff's active litigation against the removal spoiler, the plaintiff would not have named the removal spoiler or would have dropped the spoiler before the one-year mark but for the plaintiff's desire to keep the case in state court.

3

> The defendant may introduce direct evidence of the plaintiff's bad faith at this stage—*e.g.*, electronic mail transmissions in which the plaintiff states that he or she is only keeping the removal spoiler joined to defeat removal—but will not receive discovery or an evidentiary hearing in federal court to obtain such evidence.

*Aguayo*, 59 F.Supp.3d at 1262-63.

Defendant concedes that Plaintiff likely satisfies the first prong. Doc. No. 13 at p. 3. Plaintiff conducted discovery and engaged in settlement discussions with Migl. Doc. No. 9 at pp. 11, 13. Moreover, based on the prior rulings of both this Court and the state court, Plaintiff's claims against Migl were valid. So under *Aguayo*, Plaintiff actively litigated his claims against Migl, and is therefore entitled to a rebuttable presumption of good faith.

The sole question remaining for the Court is whether Defendant has offered sufficient evidence to establish that Plaintiff's subjective intent was either to join Migl solely as a removal spoiler or to delay dismissing Migl until after the one-year mark in the litigation. To meet its burden, Defendant must present evidence of bad faith that "is 'a smoking gun or close to it.'" *Stevens v. Winston Hosp., Inc.*, No. CIV-19-102-PRW, 2020 WL 1285923, at *2 (E.D. Okla. Mar. 18, 2020) (quoting *Aguayo*, 59 F.Supp.3d at 1277). Specifically, "'[t]he suspicious timing of a dismissal, a drop in a settlement offer to the removal spoiler after the one-year mark, or an ambiguous comment about how the plaintiff plans to drop the removal spoiler before trial, will not suffice.'" *Id*. (quoting *Aguayo*, 59 F.Supp.3d at 1277). Instead, Defendant "'must present strong, relatively compelling evidence, direct or circumstantial, of the plaintiff's subjective intent in order to rebut the presumption of good faith[.]'" *Id*. (quoting *Holman v. Coventry Health & Life Ins. Co.*, No. CIV-17-886-HE, 2017 WL 5514177, at *2 (W.D. Okla. Nov. 17, 2017)).

Defendant points to the following evidence to establish Plaintiff's subjective bad faith:

- Plaintiff's voluntary dismissal of Migl without consideration on the eve of trial, Doc. No. 13 at pp. 11-12; Doc. No. 1, ¶¶ 15-16;

- Plaintiff's delay in dismissing Migl despite knowing that his purported theory of vicarious liability against Defendant for Migl's solicitations could be satisfied prior to the one-year mark, Doc. No. 13 at pp. 6-7; and

- Plaintiff's statement in the Joint Status/Scheduling Report [Doc. No. 10] suggesting that he anticipates rejoining Migl despite the only substantive development in the case being Defendant's removal, *id*. at pp. 2-7.

Plaintiff provides an explanation for each portion of Defendant's offered evidence. Doc. No. 15.

First, Plaintiff contends that he considered several litigation strategies leading up to trial. *Id*. at pp. 2-3. In Plaintiff's view, he could either (1) settle with Migl; (2) proceed to trial against both Defendant and Migl; (3) dismiss Migl at trial depending on the evidence and court rulings; or (4) dismiss Migl without prejudice. *Id*. Plaintiff asserts that the final option was best suited "to achieve the goal to streamline and simplify the issues for the jury as much as possible." *Id*. at p. 3. Plaintiff reached this conclusion by considering the potential juror confusion that could stem from including a contract claim with his bad faith claim, the possibility of a settlement with Migl causing unfair prejudice to Plaintiff at trial, the added difficulty of proceeding to trial against two attorneys instead of one, and the prospect of the jury having reservations about awarding a large verdict against Migl. *Id*. at pp. 2-3.

5

Second, Plaintiff defends the alleged delay in dismissing Migl on two grounds. First, following Migl's November 2023 deposition, Plaintiff sought supplemental discovery, which was not produced until April of 2024—more than a year after the litigation commenced. *Id*. at p. 4. And second, in January of 2024, Defendant filed its motion for partial summary judgment, arguing that it was not liable for any allegedly fraudulent statements made by Migl. *Id*.; Doc. No. 15-1. Plaintiff believes that if that motion had been granted, it would have forced him to retain Migl as a defendant to preserve his fraud claim. Doc. No. 15 at p. 4. However, because the motion was denied, it is Plaintiff's view that his theory that Migl's allegedly fraudulent statements were attributable to Defendant remained viable for trial, and Migl therefore became a proper, but not indispensable, party [Doc. No. 1-2, ¶ 8].

Finally, Plaintiff attributes the statements made in the Joint Status/Scheduling Report to Defendant's continued argument that it is not responsible for Migl's allegedly fraudulent statements. *Id*. at pp. 4-5. To Plaintiff, if his instant Motion is denied, Defendant could re-urge this argument despite the state court's previous ruling on the issue, which, if successful, would require Plaintiff to rejoin Migl to preserve his fraud claim. *Id*.

Here, the Court—drawing all reasonable inferences in Plaintiff's favor—finds that Plaintiff's justifications based on trial strategy and the potential need to re-join Migl are "plausible alternative explanation[s,]" *Aguayo*, 59 F.Supp.3d at 1277, sufficient to overcome Defendant's offered evidence of bad faith. So the bad faith exception enumerated in § 1446(c)(1) does not apply, and Defendant's removal is untimely.

6

## CONCLUSION

Accordingly, Plaintiff's Amended Motion to Remand is GRANTED.[1]

IT IS SO ORDERED this 18th day of July, 2025.

*[signature: David L. Russell]*

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE

---

[1] Plaintiff requests the Court to award him fees for Defendant's unsuccessful removal. Doc. No. 9 at pp. 14-15. However, because there was an "objectively reasonable basis for believing the removal was proper[,]" *Holman*, 2017 WL 5514177, at *4 (citing *Martin v. Franklin Capital Corp.*, 393 F.3d 1143, 1146 (10th Cir. 2004)), Plaintiff's request is denied.